Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRENDAN O'CONNOR, | ) Case No. |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **COMPLAINT FOR VIOLATIONS OF** |
| | ) **THE FEDERAL SECURITIES LAWS** |
| | ) |
| LIVONGO HEALTH INC., CHRISTOPHER | ) JURY TRIAL DEMANDED |
| BISCHOFF, SANDRA FENWICK, KAREN | ) |
| L. DANIEL, PHILIP D. GREEN, HEMANT | ) |
| TANEJA, GLEN E. TULLMAN, and ZANE | ) |
| BURKE, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

Plaintiff Brendan O'Connor ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1.      Plaintiff brings this action against Livongo Health, Inc. ("Livongo" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to Teladoc Health, Inc. ("Teladoc") through Teladoc's wholly owned subsidiary Tempranillo Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On August 5, 2020, the Company and Teladoc announced that they had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which each Livongo stockholder will receive (i) 0.5920 of a share of Teladoc common stock, and (ii) $4.24 per share in cash for each share of Livongo common stock they own.  Given Livongo's recent extraordinary level of success and Teladoc's history of lackluster performance, the combination of these two companies may not be in the best interest of Company stockholders.  In fact, the implied per-share merger consideration for Livongo stockholders (based upon the exchange rate and Teladoc's October 15, 2020 close of $224.35) is currently $137.10, which represents *zero premium* to the value of Livongo's shares on August 3, 2020 ($136.63), and little more than a 10% premium to the value of Livongo's shares one week before the deal announcement ($123.44).

3.      On September 15, 2020, defendants filed a Definitive Proxy Statement on Schedule 14A (the "Proxy") with the SEC which omits or misrepresents material information concerning the Proposed Transaction, in particular concerning the basis and quantification of Livongo's projections and the true nature of the future prospects of the Company, and the basis of the quantification of the expected synergies between Livongo and Teladoc that will potentially inure to the benefit of Livongo stockholders.  The failure to adequately disclose such material information renders the Proxy false and misleading, and makes it impossible for Livongo stockholders to determine whether they should accept the terms of the Proposed Transaction of whether the Company is better continuing as a standalone entity.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

4.      The stockholder vote to approve the Proposed Transaction is forthcoming.  Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

### JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.      The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's principal executive offices are located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

### THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Livongo.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

9.      Defendant Livongo is a Delaware corporation with its principal executive offices located at 150 West Evelyn Avenue, Suite 150, Mountain View, California 94041.   Livongo's common stock trades on the Nasdaq Global Select Market under the ticker symbol "LVGO."

10.      Defendant Christopher Bischoff is, and has been at all relevant times, a director of the Company.

11.      Defendant Sandra Fenwick is, and has been at all relevant times, a director of the Company.

12.      Defendant Karen L. Daniel is, and has been at all relevant times, a director of the Company.

13.      Defendant Philip D. Green is, and has been at all relevant times, a director of the Company.

14.      Defendant Hemant Taneja is, and has been at all relevant times, a director of the Company.

15.      Defendant Glen E. Tullman is, and has been at all relevant times, Executive Chairman of the Board and a director of the Company.

16.      Defendant Zane Burke is, and has been at all relevant times, Chief Executive Officer ("CEO") and a director of the Company.

17.      Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

18.      Relevant non-party Teladoc is a Delaware corporation, with its principal executive offices located at 2 Manhattanville Road, Suite 203, Purchase, New York 10577.  Teladoc's common stock trades on the New York Stock Exchange under the ticker symbol "TDOC."

19.      Relevant non-party Merger Sub is a Delaware corporation and a wholly owned subsidiary of Teladoc.

- 4 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

**SUBSTANTIVE ALLEGATIONS**

2

**Company Background**

3

4

20.     Livongo has created a unified platform that provides smart, cellular-connected

5

devices, supplies, informed coaching, and data science-enabled insights and facilitates access to

6

medications across multiple chronic conditions to help members lead better lives.

7

21.     Livongo currently offers Livongo for Diabetes, Livongo for Hypertension, Livongo

8

for Prediabetes and Weight Management, and Livongo for Behavioral Health by myStrength.

9

Livongo creates consumer-first experiences with high member satisfaction, measurable, sustainable

10

health outcomes, and more cost-effective care for members and clients.

11

22.     On August 5, 2020, the Company announced its second quarter 2020 financial results,

12

including: (i) total revenue of $91.9 million, a 125% increase from $40.9 million in the second quarter

13

of 2019; (ii) GAAP gross margin of 76.6%, compared to 70.8% in the second quarter of 2019; (iii)

14

Non-GAAP net income of $12.5 million, compared to net loss of $7.5 million in the second quarter

15

of 2019; and (iv) Adjusted EBITDA of $13.3 million, compared to a loss of $7 million in the second

16

quarter of 2019.  The second quarter numbers represent extraordinary recent gains and prospects of

17

success for the Company, which have been reflected in Livongo's stock price; between April 1, 2020

18

and August 3, 2020, Livongo rose ***nearly 500%*** from $27.80 to $136.30.  Given the unfortunate

19

profile of the COVID-19 pandemic and the nature of Livongo's business and operations, this recent

20

success may not be an anomalous short-term blip.

21

**The Proposed Transaction**

22

23

23.     On August 5, 2020, Livongo and Teladoc issued a joint press release announcing the

24

Proposed Transaction which states, in relevant part:

25

> PURCHASE, NY and MOUNTAIN VIEW, Calif., Aug. 05, 2020 -- Teladoc Health
> (TDOC), the global leader in virtual care, and Livongo (LVGO), the leading Applied
> Health Signals company – today announced that they have entered into a definitive

26

27

28

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

merger agreement.  This merger represents a transformational opportunity to improve the delivery, access and experience of healthcare for consumers around the world.  The highly complementary organizations will combine to create substantial value across the healthcare ecosystem, enabling clients everywhere to offer high quality, personalized, technology-enabled longitudinal care that improves outcomes and lowers costs across the full spectrum of health.

Under the terms of the agreement, which has been unanimously approved by the Board of Directors of each company, each share of Livongo will be exchanged for 0.5920x shares of Teladoc Health plus cash consideration of $11.33 for each Livongo share, representing a value of $18.5 billion based on the closing price of Teladoc Health shares as of August 4, 2020.  Upon completion of the merger, existing Teladoc Health shareholders will own approximately 58 percent and existing Livongo shareholders will own approximately 42 percent of the combined company.

The combination of Teladoc Health and Livongo creates a global leader in consumer centered virtual care.  The company will have expected 2020 pro forma revenue of approximately $1.3 billion, representing year over year pro forma growth of 85 percent.  Demonstrating the power of the combined platform and the scalability of the data driven and virtual ethos, the combined company is expected to have pro forma Adjusted EBITDA of over $120 million for 2020.

"This merger firmly establishes Teladoc Health at the forefront of the next-generation of healthcare," said Jason Gorevic, CEO of Teladoc Health.  "Livongo is a world-class innovator we deeply admire and has demonstrated success improving the lives of people living with chronic conditions.  Together, we will further transform the healthcare experience from preventive care to the most complex cases, bringing 'whole person' health to consumers and greater value to our clients and shareholders as a result."

"This highly strategic combination will create the leader in consumer-centered virtual care and provides a unique opportunity to further accelerate the growth of our data-driven member platform and experience," said Glen Tullman, Livongo Founder and Executive Chairman.  "By expanding the reach of Livongo's pioneering Applied Health Signals platform and building on Teladoc Health's end-to-end virtual care platform, we'll empower more people to live better and healthier lives.  This transaction recognizes Livongo's significant progress and will enable Livongo shareholders to benefit from long-term upside as the combined company is positioned to serve an even larger addressable market with a truly unmatched offering."

**Strategic and financial benefits of the combination**

- **The combination joins two highly complementary companies to create an unmatched, comprehensive platform for virtual healthcare delivery.**  By bringing together leaders in virtual health and chronic condition management, the merger combines comprehensive clinical expertise with a rich technology and data-driven experience; prevention and chronic condition management with acute and specialty care; behavior change expertise with data science;

- 6 -

global footprint with products meeting global need; access with innovation and two of the fastest growing companies in health technology.

- **Combining clinical expertise with deeper, more comprehensive consumer health insights to deliver the highest quality care and improve outcomes.** The transaction combines Teladoc Health's broad integrated services across virtual care with Livongo's data-driven approach to providing actionable, personalized, and timely health signals to create a comprehensive virtual healthcare delivery system. The combined company's platform will feature the full range of health support – from AI+AI engine-driven "nudges" and health coaches to therapists and board-certified physicians and the world's leading specialists – available anytime, anywhere to ensure the right care is always delivered.

- **Focusing on prevention as a critical lever for reimagining healthcare delivery.** Together, Teladoc Health and Livongo will empower consumers to proactively manage their wellbeing with the help of a single, comprehensive partner across the full spectrum of health, whether they are at-risk of, or living with, chronic conditions or need acute care. By tapping into data and care anytime, anywhere, consumers will have real-time information and guidance to stay healthy and avoid the unchecked progression of illness.

- **Joining two leaders in consumer behavior change, bringing millions more consumers into virtual care and building even deeper consumer and provider relationships.** Teladoc Health's flywheel approach to continued member engagement combined with Livongo's proven track record of using data science to build consumer trust will accelerate the combined company's development of longitudinal consumer and provider relationships.

- **Expanding Teladoc Health's portfolio and footprint with Livongo's leadership in addressing underpenetrated and underserved chronic condition populations.** Teladoc Health's global reach, including 70 million customers in the United States, and significant access to high growth segments in that market (e.g., Medicare and Medicaid) give Livongo a stronger platform to reach millions of new consumers, at risk of, or living with chronic disease.

- **Complementary cultures and operating philosophies that put a premium on health equity.** Teladoc Health has long focused on virtual care as the "great equalizer" expanding access to underserved communities facing negative social determinants of health. With Livongo's focus on chronic conditions, which disproportionately impacts underserved communities, the combined company will be positioned to make meaningful progress on addressing long-standing disparities.

- **Significant shareholder value creation and revenue acceleration opportunities.** The combined company is positioned to execute quantified opportunities to drive revenue synergies of $100 million by the end of the

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

second year following the close, reaching $500 million on a run rate basis by 2025. These opportunities include increased cross-selling and penetration into each company's client base. They also include accelerating Livongo's international expansion through Teladoc Health's existing footprint, improving combined company member retention rates and driving more efficient enrollment. In addition to the quantified synergies, the combination offers significant unquantified synergies by enabling new care models and next generation solution opportunities. As a result of efficiencies, the combined company is expected to achieve cost synergies of $60 million by the end of the second year following the close, which can be reinvested to drive topline growth and margin expansion.

### Leadership & Governance

Jason Gorevic, current CEO of Teladoc Health, will be the CEO of the combined company. Led by Teladoc Health chairman, David Snow, the newly combined Teladoc Health Board of Directors will be composed of eight members of the Teladoc Health Board and five members of the Livongo Board.

### Additional Transaction Details

The transaction is expected to close by the end of Q4 2020, subject to regulatory and Teladoc Health and Livongo shareholder approvals and other customary closing conditions. The newly combined company will be called Teladoc Health and will be headquartered in Purchase, New York.

### The Proxy Misleads Livongo Stockholders by Omitting Material Information

24.     On September 15, 2020, defendants filed the materially misleading and incomplete Proxy with the SEC. Designed to convince the Company's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information.

25.     First, the Proxy omits material information regarding the Company's financial projections.

26.     Specifically, the Proxy fails to disclose the street case projections for each of Livongo and Teladoc used by Morgan Stanley for its financial analyses.

27.     Next, with respect to the synergies that the Proposed Transaction is expected to generate, the Proxy repeats the claim from the August 5 joint press release and states that the Livongo Board:

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

[Expects] that the merger will enable the combined company to generate approximately $100 million of annual gross run-rate revenue synergies by end of the second year following the closing of the merger, reaching approximately $500 million of annual gross run-rate revenue synergies by 2025, due in part to the comparatively small overlap in Livongo's and Teladoc's coverage of Fortune 500 companies, by cross-selling products into the merging parties' combined customer base; the expectation that the merger will achieve annual gross run-rate cost synergies of approximately $60 million by the end of the second year following the closing of the merger;

Proxy at 95.  The expected revenue and cost synergies are a critical factor in properly assessing the

Proposed Transaction, and the Proxy is deficient in describing how Livongo management and the

Board arrived at these estimates.  The Proxy does not disclose how Livongo quantified the synergies,

the process by which management and the Board assessed the prospective synergies, or the role the

financial advisers or any other third parties played in these calculations.  The Proxy provides an only

a cursory overview of the revenue and cost synergies, yet they are depicted as a significant source of

future value to Company investors and employed as a critical mechanism to convince Livongo

stockholders to vote in favor of the Proposed Transaction.  This must be corrected before the

stockholder vote.

28.     Additionally, with respect to Teladoc's projections, the Proxy sets forth:

At Teladoc's direction, representatives of Lazard provided representatives of Morgan Stanley financial projections through 2022 prepared by Teladoc management and identified as "Case 1" and "Case 2" in this proxy statement/prospectus. The main difference between Case 1 and Case 2 is that Case 2 assumes a higher revenue growth rate. Lazard informed Morgan Stanley that at Teladoc's direction Lazard would be using Case 1 for purposes of Lazard's analyses in connection with its opinion and that the Teladoc board of directors would be primarily relying on Case 1 in connection with its evaluation of the transaction. Based on the foregoing projections, Teladoc's financial results for calendar years 2023 through 2030 were extrapolated by Livongo and projections of Teladoc's unlevered free cash flows for the third and fourth quarters of calendar year 2020 and for calendar years 2021 through 2030 were generated by Livongo, which were reviewed and approved by Livongo management for Morgan Stanley's use in its financial analyses. The foregoing financial projections were presented to and reviewed by the Livongo board of directors in connection with its evaluation of the transaction and approved for use by Morgan Stanley in connection with its financial analyses.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Proxy at 124.  The Proxy fails to disclose (i) projected revenue, adjusted EBITDA and unlevered free cash flow ("UFCF") for the period of the third quarter of 2020E to 2022E for the Case 2 forecasts; and (ii) UFCFs for each of the calendar years 2023 through 2030 for both the Case 1 and Case 2 forecasts.

29.     Moreover, the Proxy fails to disclose the estimates for net operating loss and tax credit carryforwards for each of the Livongo Street Case, Livongo Plan A projections, Livongo Plan B projections, Teladoc Street case, Teladoc Case 1 forecasts and Teladoc Case 2 forecasts utilized by Morgan Stanley for its discounted cash flow analyses.

30.     Furthermore, for each of the Livongo Street Case, Livongo Plan A projections, Livongo Plan B projections, Teladoc Street case, Teladoc Case 1 forecasts and Teladoc Case 2 forecasts, the Proxy fails to disclose the line items underlying UFCFs.

31.     With respect to the projected pro forma performance of the newly-combined entity, the Proxy also fails to disclose the pro forma impact of the merger on Teladoc's earnings per share, cash flow, consolidated capitalization and certain financial ratios.

32.     If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.  While the proxy includes some projection and valuation information, Livongo stockholders need a sufficient basis to decide whether to divest their interest in the Company as a standalone entity.  This is a decision that requires stockholders be provided adequate information about both the future prospects of Livongo if it were to continue operating independently along with the prospects of Livongo and Teladoc as a single combined company.  In light of the foregoing, the Proxy does neither.

33.     The Proxy also omits material information regarding Morgan Stanley's financial analyses supporting its fairness opinion.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

34.     With respect to Morgan Stanley's *Livongo Discounted Equity Value Analysis* and *Teladoc Discounted Equity Value Analysis*, the Proxy fails to disclose the inputs and assumptions underlying the discount rates of 9.4% and 7.5%, respectively.

35.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis* for both Livongo and Teladoc the Proxy fails to disclose: (i) estimates for net operating loss and tax credit carryforwards; (ii) the implied terminal values resulting from the analysis; (iii) quantification of the inputs and assumptions underlying the discount rate range of 8.3% to 10.2% and 7.3% to 8.2%, respectively; and (iv) net debt.

36.     With respect to Morgan Stanley's *Precedent Transaction Multiples Analysis*, the Proxy fails to disclose the multiples and financial metrics for each of the transactions analyzed.

37.     With respect to Morgan Stanley's *Analyst Price Targets* analysis, the Proxy fails to disclose the individual price targets for Livongo and Teladoc and the sources thereof.

38.     Without such undisclosed information, Livongo stockholders cannot evaluate for themselves whether the financial analyses performed by Morgan Stanley were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Morgan Stanley's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

39.     Finally, the Proxy omits material information concerning the potential conflicts of interest faced by Morgan Stanley.

40.     Specifically, the Proxy sets forth that "Livongo may, in its sole discretion, also pay Morgan Stanley an additional discretionary fee of up to approximately $11 million contingent upon, and subject to, the consummation of the merger." *Id*. at 119.  The Proxy, however, fails to disclose

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

the parameters and criteria Morgan Stanley needs to satisfy to receive the discretionary fee and whether the Company anticipates paying Morgan Stanley the additional fee.

41.     The Proxy also fails to disclose whether Morgan Stanley has performed any services for Teladoc in the two years preceding the date of its fairness opinion, and, if so, the amount of compensation received in connection with such services.

42.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

43.     Plaintiff repeats all previous allegations as if set forth in full.

44.     During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

45.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy.  The Proxy was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's financial projections, Morgan Stanley's financial analyses, and potential conflicts of interest of Morgan Stanley.  The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

46.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

47.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

48.     Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

### COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

49.     Plaintiff repeats all previous allegations as if set forth in full.

50.     The Individual Defendants acted as controlling persons of Livongo within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Livongo, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy.

53.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Livongo's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Livongo, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

- 14 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

C.        Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.        Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.        Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.        Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: October 16, 2020

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone:  310/208-2800
Facsimile:  310/209-2348
     -and-

**OF COUNSEL:**

**FEDERMAN & SHERWOOD**
William B. Federman
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
Fax: (405) 239-2112
-and-
212 W. Spring Valley Road
Richardson, Texas 75081

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS